1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11    EVERETT LEE MEYERS,                    )   Case No.: 1:14-cv-01954-DAD-SAB (PC)
                                             )
12                      Plaintiff,           )
                                             )   **FINDINGS AND RECOMMENDATIONS**
13             v.                            )   **RECOMMENDING DEFENDANT CHEN'S**
                                             )   **MOTION FOR SUMMARY JUDGMENT BE**
14    C.K. CHEN,                             )   **GRANTED**
                                             )
15                      Defendant.           )   [ECF No. 27]
                                             )
16    _____       )

17         Plaintiff Everett Lee Meyers is appearing pro se and in forma pauperis in this civil rights action

18    pursuant to 42 U.S.C. § 1983.

19         Currently before the Court is Defendant Chen's motion for summary judgment, filed

20    December 6, 2016.

21                                           **I.**

22                                    **RELEVANT HISTORY**

23         This action is proceeding against Defendant C.K. Chen for deliberate indifference to a serious

24    medical need.

25         Defendant Chen filed the instant motion for summary judgment on December 6, 2016.

26    Plaintiff did not file an opposition.  Indeed, on January 26, 2017, defense counsel filed a declaration in

27    lieu of a formal reply because no opposition was filed.  (ECF No. 30.)  Therefore, pursuant to Local

28    Rule 230(l), the motion is deemed submitted for review without oral argument.

                                              1

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

## III.

## DISCUSSION

### A.     Summary of Plaintiff's Complaint

According to the allegations of the first amended complaint, Plaintiff was in a physical altercation on the Delta yard at Kern Valley State Prison (KVSP) on September 14, 2013.  Plaintiff was seriously injured during the altercation and sustained extensive damages to his shoulder.  Plaintiff was immediately taken to an outside hospital emergency room at Delano Regional Medical Center in Delano, California.

2

1   While hospitalized, Plaintiff was in excruciating pain and discomfort, and x-rays were

2   performed.  Plaintiff contends the x-rays were inadequately misread, and medical staff at KVSP

3   deliberately denied him adequate medical treatment for his shoulder injury.

4   Plaintiff subsequently filed an appeal complaining of the severe pain which deprived him from

5   sleep for several weeks because Dr. Chen denied Plaintiff pain medication and medical treatment.

6   On December 2, 2013, Plaintiff received a new x-ray of his right shoulder.

7   On January 15, 2014, Plaintiff was examined by a qualified orthopedic surgeon, Dr. David

8   Smith, who examined the x-rays and discovered that Plaintiff had a third degree AC separation on his

9   right shoulder and had been suffering from untreated excruciating pain caused by Dr. Chen's

10  misconduct.

11  Dr. Smith informed Plaintiff that he was recommending that Plaintiff undergo repair of the

12  acromioclavicular separation and would schedule surgery and pain management.

13  On April 3, 2014, Plaintiff was interviewed by Dr. Chen, and Plaintiff was informed that Dr.

14  Chen was denying surgery because "he didn't care for the special orthopedic surgeon," despite Dr.

15  Chen's agreement that Plaintiff was in need of surgery.  Dr. Chen indicated that pursuant to policy, he

16  could not grant Plaintiff surgery to repair acromioclavicular separation.  Plaintiff contends that Dr.

17  Chen had no authority to deny such surgery.  Dr. Chen also denied Plaintiff stronger pain medication,

18  despite the recommendation for pain management.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**B.**     **Defendant's Statement of Undisputed Facts[1]**

1.       Plaintiff Everett Myers (P-34039) is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) who is currently incarcerated at Kern Valley State Prison (KVSP) in Delano, California.  (ECF No. 9.)

2.       At all times relevant to the allegations in this case, Plaintiff was housed at KVSP on Facility D.  (ECF No. 9 at 11.)

3.       Dr. Chen was the Primary Care Physician (PCP) at KVSP at all times relevant to the allegations in this case.  (Decl. of Chen ¶ 1, ECF No. 27-5.)

4.       As PCP, Dr. Chen regularly evaluates medical care, reviews medical records, diagnoses inmate complaints, and provides direct medical care.  (Id. ¶ 3.)

5.       On September 14, 2013, Plaintiff was involved in an altercation at KVSP, where he suffered a grade 3 AC shoulder separation.  (ECF No. 9 at 6-7.)

6.       Between September and December of 2013, Plaintiff returned to playing basketball.  (Decl. of Lee, Ex. A [Pl. Dep.] at 19:21-24.)

7.       Plaintiff was treated by non-party medical staff until December 5, 2013.  (Decl. of Chen ¶ 7.)

8.       On December 5, 2013, Dr. Chen treated Plaintiff for an aggravated right shoulder injury from December 2, 2013.  (Id. ¶ 8.)

9.       At the December 5 appointment, Dr. Chen prescribed a shoulder sling, Ibuprofen and Naproxen, and directed Plaintiff to follow-up once the x-rays were reviewed.  (Id. ¶ 9.)

---

[1]Plaintiff neither admitted or denied the facts set forth by defendant as undisputed nor filed a separate statement of disputed facts.  Local Rule 260(b).  Therefore, the court was left to compile the summary of undisputed facts from Defendant's statement of undisputed facts and Plaintiff's verified complaint.  A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief.  McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e).  Because plaintiff neither submitted his own statement of disputed facts nor addressed defendants' statement of undisputed facts, the Court accepts Defendant's version of the undisputed facts where Plaintiff's verified complaint is not contradictory.  The court notes for the record that Plaintiff was provided with the requirements for opposing a motion for summary judgment by Defendant's in a notice filed on December 6, 2016.  (ECF No. 44-3.)  Therefore, the requirements of Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988) have been satisfied.

10.     On January 15, 2014, Plaintiff received a recommendation from Dr. Smith for right shoulder surgery to repair the third degree AC separation.  (Lopez Decl. ¶ 8(c).)

11.     Dr. Chen ordered conservative treatment for Meyers which included NSAIDs and physical therapy.  (Chen Decl. ¶¶ 1-11.)

12.     Current medical opinions indicate that grade 3 AC shoulder separations can properly be treated with conservative methods, prior to pursuing surgery.  (Lopez Decl. ¶ 6.)

13.     On March 27, 2014, Plaintiff was renewed for physical therapy sessions by Dr. Chen.  (Lopez Decl. ¶ 8(f).)

14.     Dr. Chen also encouraged Plaintiff to continue therapeutic exercise which would help with his range of motion and mobilization.  (Id.)

15.     On April 3, 2014, Dr. Chen continued Plaintiff's physical therapy appointments and his prescription for NSAIDS.  (Chen Decl. ¶ 13.)

16.     Throughout April, Plaintiff received six physical therapy appointments, which increased his range of motion, strength and mobilization.  (Lopez Decl. ¶ 8(h).)

17.     Occasionally, Plaintiff refused to participate in his prescribed physical therapy appointments.  (Lopez Decl. ¶¶ 8(e) 8(s), 8(u).)

18.     Throughout this time, Plaintiff participated in several rights where he threw punches with his right hand.  (Lee Decl., Ex. A at 33:19-34:1.)

19.     Plaintiff continued to play basketball during the rehabilitation process.  (Id. at 40:4-8.)

20.     At a May 5, 2014 appointment, Plaintiff expressed no interference with activities of daily living and that the right shoulder was normal, with full range of motion, and a strength rating of five out of five.  (Lopez Decl. ¶ 8(k).)

21.     By May 21, 2014, Dr. Smith opined that Plaintiff could use further physical therapy and pain medication, but no longer diagnosed a need for surgery.  (Lopez Decl. ¶ 8(l).)

22.     On May 28, 2014, Plaintiff reported being able to play basketball and exercise regularly.  (Lopez Decl. ¶ 8(m).)

23.     Objectively, a treating physician noted that Plaintiff's right shoulder appeared healed and rehabilitated.  (Id.)

24.     Plaintiff was prescribed further pain medication and consideration for further physical therapy appointments was given.  (Id.)

25.     On June 18, 2014, Plaintiff was treated by Dr. Smith, who noted Plaintiff had recently re-injured his shoulder in a fight.  (Lopez Decl. ¶ 8(n).)

26.     Dr. Smith recommended further physical therapy to treat the re-injured right shoulder. (Id.)

27.     On August 27, 2014, Plaintiff was treated by Dr. Smith, who recommended Naprosyn for ongoing pain and noted Plaintiff could continue in all normal activities and sports.  (Lopez Decl. ¶ 8(o).)

28.     On August 29, 2014, Plaintiff demonstrated decreased flexion and abduction, and was prescribed further physical therapy to increase his range of motion and strength.  (Lopez Decl. ¶ 8(p).)

29.     By September 8, 2014, Plaintiff demonstrated improved strength in his right shoulder, and he continued to show an excellent response to physical therapy at ensuing appointments.  (Lopez Decl. ¶¶ 8(q), 8(r) & 8(t).)

**C.     Findings on Defendant's Motion**

Defendant argues that Plaintiff agrees he (1) properly diagnosed him at their first visit; (2) ordered physical therapy treatments which were successful; (3) continued to review and update his treatment despite Plaintiff aggravating his right shoulder in fights and sporting; (4) prescribed him pain medication which kept pain at a minimum.  Accordingly, Defendant argues there is no evidence demonstrating that he knew of or disregarded a serious risk to Plaintiff's medical need.  In the alternative, Defendant argues he is entitled to qualified immunity.

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that

6

1   "the defendant's response to the need was deliberately indifferent."  Wilhelm, 680 F.3d at 1122 (citing

2   Jett, 439 F.3d at 1096).  Deliberate indifference is shown by "(a) a purposeful act or failure to respond

3   to a prisoner's pain or possible medical need, and (b) harm caused by the indifference."  Wilhelm, 680

4   F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective

5   recklessness, which entails more than ordinary lack of due care.  Snow, 681 F.3d at 985 (citation and

6   quotation marks omitted); Wilhelm, 680 F.3d at 1122.

7           It is well established that deliberate indifference may be shown when prison official ignore

8   express orders from a prisoner's treating physician.  See Estelle, 429 U.S. at 104-105 (deliberate

9   indifference may manifest "by prison doctors in their response to the prisoner's needs or by prison

10  guards in intentionally denying or delaying access to medical care or intentionally interfering with the

11  treatment once prescribed"); Colwell v. Bannister, 763 F.3d 1060, 1068-1069 (9th Cir. 2014)

12  (reiterating that prison's reliance on non-specialist prison physicians' opinions who make decisions

13  based on policy, rather than specialists contradictory opinions, satisfies deliberate indifference

14  standard); Snow, 681 F.3d at 988 (non-treating, non-specialist physicians may have been deliberately

15  indifferent to prisoner's needs when they repeatedly denied outside specialists' recommendations for

16  hip-replacement surgery); Jett, 439 F.3d at 1097-1098 (prison doctor may have been deliberately

17  indifferent to a prisoner's medical needs when he decided not to request an orthopedic consultation as

18  the prisoner's emergency room doctor had previously ordered); Lopez v. Smith, 203 F.3d 1122, 1132

19  (9th Cir. 2000) (a prisoner may establish deliberate indifference by showing that a prison official

20  intentionally interfered with his medical treatment); Wakefield v. Thompson, 177 F.3d 1160, 1165 &

21  n.6 (9th Cir. 1999) ("a prison official acts with deliberate indifference when he ignores the instructions

22  of the prisoner's treating physician or surgeon.").  In order to show a deliberate-indifference claim

23  premised on delay, an inmate must demonstrate that the delay led to further injury.  Trask v. Abanico,

24  No. CV-08-1695, 2011 WL 3515885, at *5 (N.D. Cal. 2011) (citing Hallett v. Morgan, 296 F.3d 732,

25  746 (9th Cir. 2008)).

26          Plaintiff's claim against Defendant arises out of Plaintiff's disagreement with the course of

27  treatment prescribed by Defendant to address Plaintiff's complaint of shoulder pain.  A mere

28  difference of opinion between Plaintiff and Defendant regarding medical treatment does not give rise

to a claim under section 1983, or a difference of opinion among medical professionals does not suffice to give rise to a claim for deliberate indifference.  Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at 1122-23; Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  Rather, Plaintiff must show that the course of treatment chosen was medically unacceptable under the circumstances and that it was chosen in conscious disregard of an excessive risk to Plaintiff's health.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (quotation marks omitted); accord Snow, 681 F.3d at 987-88.

On September 14, 2013, Plaintiff was involved in an altercation at KVSP, where he suffered a grade 3 AC shoulder separation.  Between September and December of 2013, Plaintiff returned to playing basketball.  (Lee Decl. Ex. P. [Pl. Dep.] at 19:21-24.)  Plaintiff was treated by non-party medical staff until December 5, 2013.  (Chen Decl. ¶ 7.)

On December 5, 2013, Defendant Dr. Chen treated Plaintiff for an aggravated right shoulder injury from December 2, 2013.  (Chen Decl. ¶ 8.)  At the December 5 appointment, Dr. Chen prescribed a shoulder sling, Ibuprofen and Naproxen, and directed Plaintiff to follow-up once the X-rays were reviewed.  (Chen Decl. ¶ 9.)  On January 6, 2014, Plaintiff reported that the right shoulder injury was not interfering with his activities of daily living.  (Lopez Decl. ¶ 8(b).)

On January 15, 2014, Plaintiff received a recommendation from Dr. Smith for right shoulder surgery to repair the third degree AC separation.  (Lopez Decl. ¶ 8(c).)

On January 29, 2014, Dr. Chen treated Plaintiff at a follow-up examination.  (Chen Decl. ¶ 10.) Dr. Chen ordered conservative treatment for Plaintiff which included NSAIDs and physical therapy. (Chen Decl. ¶¶ 10-11.)

On March 24, 2014, Plaintiff reported to medical staff that he was able to workout, complete activities of daily living, participate in yard, and work a job as a porter.  (Lopez Decl. ¶ 8(e).)  On March 27, 2014, Plaintiff was renewed for physical therapy sessions by Dr. Chen.  (Lopez Decl. ¶ 8(f).)  Dr. Chen also encouraged Plaintiff to continue therapeutic exercise which would help with his range of motion and mobilization.  (Id.)

On April 3, 2014, Dr. Chen treated Plaintiff and noted that his current diagnosis met the criteria for conservative treatments.  (Chen Decl. ¶ 13.)  Dr. Chen continued Plaintiff's physical therapy appointments and his prescription for NSAIDs.  (Id.)

Throughout April, Plaintiff received six physical therapy appointments, which increased his range of motion, strength, and mobilization.   At his deposition, Plaintiff acknowledged that the physical therapy appoints were beneficial and ultimately worked.  (Lee Decl., Ex. A at 34:23-24, 42:14-16.)  Throughout this time, Plaintiff participated in several fights where he threw punches with his right hand.  (Lee Decl., Ex. A at 33-34.)  In addition, Plaintiff continued to play basketball during the rehabilitation process.  (Id. at 40:4-8.)

At a May 5, 2014 appointment, Plaintiff expressed no interference with activities of daily living and that the right shoulder was normal, with full range of motion, and a strength rating of five out of five.  (Lopez Decl. ¶ 8(k).)  By May 21, 2014, Dr. Smith opined that Plaintiff could use further physical therapy and pain medication, but no longer diagnosed a need for surgery.  (Lopez Decl. ¶ 8(l).)  By May 28, 2014, Plaintiff reported being able to play basketball and exercise regularly. (Lopez Decl. ¶ 8(m).)  On this same date, a treating physician noted that Plaintiff's right shoulder appeared healed and rehabilitated.  (Lopez Decl. ¶ 8(m).)  Plaintiff was prescribed further pain medication and consideration for further physical therapy was given.  (Id.)

On June 18, 2014, Plaintiff was treated by Dr. Smith, who noted Plaintiff had recently re-injured his shoulder in a fight.  (Lopez Decl. ¶ 8(n).)  Dr. Smith recommended further physical therapy to treat the re-injured right shoulder.  (Id.)

On August 27, 2014, Plaintiff was treated by Dr. Smith, who recommended Naprosyn for ongoing pain and noted Plaintiff could continue in all normal activities and sports.  (Lopez Decl. ¶ 8(o).)

On August 29, 2014, Plaintiff demonstrated decreased flexion and abduction, and was prescribed further physical therapy to increase his range of motion and strength.  (Lopez Decl. ¶ 8(p).)

By September 8, 2014, Plaintiff demonstrated improved strength in his right shoulder, and he continued to show an excellent response to physical therapy at ensuing appointments.  (Lopez Decl. ¶¶ 8(q), 8(r), 8(t).)   Plaintiff skipped physical therapy appointments in September 2014.  (Lopez Decl. ¶¶

With respect to treatment of Plaintiff's shoulder pain by Defendant, Defendant submits the declaration of Chief Medical Executive, S. Lopez, who opines that current medical opinions indicate that grade 3 AC shoulder separations can properly be treated with conservative methods, prior to

pursuing surgery.  (Lopez Decl. ¶ 6.)   Furthermore, it is undisputed that the conservative treatments ordered by Defendant Dr. Chen were successful in treating Plaintiff's right shoulder separation. (Lopez Decl. ¶ 9; Pl. Dep. at 42:14-16.)

Defendant has met his burden of setting forth evidence demonstrating that the course of treatment he chose was medically acceptable under the circumstances, which shifts the burden to Plaintiff to submit admissible evidence showing that the course of treatment chosen by Defendant was medically unacceptable and that it was chosen in conscious disregard of an excessive risk to Plaintiff's health.  Plaintiff has not done so.  As a lay witness, Plaintiff is not qualified to render an opinion that Defendant should have considered other types of pain medication and that Defendant's failure to do so was in contravention of acceptable medical standards.  Fed. R. Evid. 701, 702.  In sum, the record demonstrates that Plaintiff's complaints regarding his shoulder were repeatedly and appropriately addressed by prison medical staff, including Defendant.  Plaintiff's mere disagreement with the course of treatment chosen by Defendant does not support a claim under the Eighth Amendment, and Defendant is entitled to summary judgment.  <u>Snow</u>, 681 F.3d 987-88.

## IV.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendant's motion for summary judgment be granted.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may

///

///

///

///

result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   __**March 22, 2017**__

UNITED STATES MAGISTRATE JUDGE